Linda CARTER, Plaintiff–
Appellee/Cross–
Appellant,

v.

**UNITED STATES of America,**
**Defendant–Appellant/Cross–**
**Appellee.**

**Nos. 02–6036, 02–6037.**

United States Court of Appeals,
Sixth Circuit.

Sept. 14, 2004.

Before KRUPANSKY and COLE, Circuit Judges; and COOK, District Judge.*

**OPINION**

COLE, Circuit Judge.

The United States appeals the order of the district court granting summary judgment to Linda Carter on her complaint that the Internal Revenue Service ("IRS") wrongfully levied a mutual fund account which had been awarded to her in a divorce judgment, in order to collect on an outstanding tax liability of Carter's former husband, Todd Brooks. In granting partial summary judgment to Carter, the district court held that the levy was wrongful because Carter was a judgment lien creditor entitled to priority over the federal tax lien against Brooks and thus entitled to judgment in the amount of $390,958.24, the gross amount of the levied account, including withheld taxes and surrender charges, plus interest.

**I.**

On June 19, 1995, the IRS assessed $516,924.15 in tax liability against Todd Brooks for his failure to pay income taxes for the years 1992 and 1993. (Carter and Brooks had filed separate income tax returns throughout the course of their marriage.) Carter and Brooks were divorced on August 6, 1997, and the divorce judgment awarded "ITT Hartford Mutual Fund Account # 68901" (the "Hartford Account"), valued at that time at $247,045.04, to Carter. The divorce judgment also stated that any liability and/or debt of Brooks to the IRS remained Brooks's "separate property."

On March 30, 1998, the IRS filed with the Register of Deeds of Shelby County, Tennessee, a notice of a federal tax lien for $516,924.15, plus interest, owed by Brooks. At some point between June 16, 1999, and July 27, 1999 (the exact date is in dispute), the IRS served the Hartford Life Insurance Co. with a notice of levy upon the Hartford Account. Hartford Life complied with the notice and liquidated the account, which had a gross value of $390,958.24. Of this amount, $1,621.44 went to surrender charges to Hartford Life and $38,933.68 went to withheld tax. The remaining $350,403.12 was applied to Brooks's tax liability, apparently along with money levied from other Hartford Life accounts owned by Brooks.

On April 18, 2001, Carter filed a complaint in the district court for the return of the funds seized by the IRS pursuant to its levy of the Hartford Account. The district court granted Carter's motion for summary judgment, in part, awarding her $390,958.24, the full value of the Hartford Account immediately prior to the levy, plus interest. The district court, however, denied Carter's claim for consequential damages in the nature of attorney's fees and costs. The district court denied the Government's motion for summary judgment.

The Government appeals the summary judgment in favor of Carter, and Carter cross-appeals the denial of consequential damages.

**II.**

■ On appeal, the Government argues that Carter filed her suit outside the stat-

* The Honorable Julian A. Cook, United States District Judge for the Eastern District of    Michigan, sitting by designation.

ute of limitations. Because statutes of limitations are a limitation upon the scope of the Government's waiver of sovereign immunity, *see United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), the Government may raise the statute of limitations defense for the first time on appeal. *See Munro v. United States*, 303 U.S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633 (1938). Carter responds that the suit was timely filed. Alternatively, she contends that applying the statute of limitations against her would violate her right to due process of law.

The general rule is that a wrongful levy suit must be filed within nine months of the receipt of the notice of levy. Internal Revenue Code ("I.R.C.") § 6532(c)(1); *State Bank of Fraser v. United States*, 861 F.2d 954, 967 (6th Cir.1988); *see also* Treas. Reg. § 301.6331–1(c) (stating that "the date and time the notice is *delivered* to the person to be served is the date and time the levy is made" (emphasis added)). If a claimant files a request for the return of property within that nine-month period, then, pursuant to I.R.C. § 6343—which grants the IRS the authority to release a levy upon appropriate circumstances and thereby provides an administrative channel through which an individual may contest a levy—the nine-month period for filing a civil action in federal court is extended for the shorter of either an additional twelve months from the date of filing a § 6343 administrative request or an additional six months from the date of mailing of the notice disallowing that request. I.R.C. § 6532(c)(2). The statute of limitations period is therefore never more than twenty-one months (nine months plus twelve months), although it may be less.

Although the parties agree that Carter filed an administrative request pursuant to § 6343, the record is silent as to the date. However, the record is clear that the IRS rejected Carter's request on October 19, 2000. Carter does not have direct evidence of the date on which the limitation period for filing a civil action began to run, or when it was extended. Instead, she points to the October 19, 2000, letter sent to her by the IRS denying her claim as evidence of those dates. Specifically, she argues that because the letter stated that the six-month extension applied to her case, the IRS must have determined that the six-month extension beginning on the date of that denial was the first to expire, rather than the twelve-month extension that began when she initially filed the administrative claim. For this to be true, she posits, the IRS must have known that the notices of levy were received no earlier than July 19, 1999, and that her claim was filed within the last few days of the original nine-month period. Thus, the argument goes, the letter is evidence of the relevant dates that demonstrate that her suit was timely filed. We agree that this letter was a sufficient basis for Carter to establish preliminarily that her suit was timely. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324, 326–27 (6th Cir.1990).

■ The Government, however, argues that the letter sent by the IRS was simply mistaken with respect to the referenced time frame. Instead, the Government asserts that the notices of levy were mailed on June 16, 1999, and asks us to employ a presumption that mail is received in the ordinary course of events within a few days. *See, e.g., Hull v. United States*, 146 F.3d 235, 241 (4th Cir.1998); *United States v. Redwitz*, 328 F.2d 395, 398 (6th Cir. 1964). If this timeline is correct, Carter's rendition of events based on the letter evidence cannot be correct. That is, even if Carter filed her claim on the last day of the nine-month period starting on June 16, 1999, the twelve-month extension would

have run out on March 16, 2001, prior to the running of the six-month extension—ending on March 19, 2001—from the date her claim was denied.

The Government's evidence of a June 16, 1999, mailing is an interrogatory answer stating that an attached "Summary of Collection Efforts Made" was prepared by Elaine Wagner, the Revenue Officer who processed the levy. This summary included a line indicating that the notices of levy were mailed on June 16, 1999. However, we have very little information about this document. It is not dated, signed, or attested to in any way. There is no indication whether this document was a contemporaneous log of collection attempts, or a document prepared in response to this litigation.

Likewise, the Government argues that Carter actually filed her claim on October 28, 2000—much sooner than she asserts—thus starting the twelve-month extension of the statute of limitations earlier. This contention draws upon an affidavit submitted by Carter asserting that she first contacted the IRS on that date. However, the affidavit entry only indicates "My initial contact with IRS—wrote letter," not the filing of a claim under I.R.C. § 6343(b). On the other hand, the date of Carter's actual claim is not in the record, and the only evidence that it occurred at the end of a nine-month period extension period beginning no earlier than June 19, 1999—rather than at some other time during the six-month period between October 28, 1999 and the expiration of the initial nine-month period—is the implication she draws from the IRS's letter denying her claim.

Ultimately, we believe the Government has cast doubt on the timeliness of Carter's suit, and this doubt is particularly relevant because Carter's evidence of timeliness—based on the denial letter—is not strong. We thus cannot conclude on this record that Carter's suit was timely. The burden of establishing timeliness such that her suit is not precluded by the sovereign immunity of the United States falls on Carter. We conclude that Carter has failed to carry this burden.

■ We also reject Carter's arguments that the statute of limitations was suspended by virtue of I.R.C. § 7811(d). Although Carter worked with the Taxpayer's Advocate Office, she did not follow the formal procedures of applying for a taxpayer assistance order, see Treas. Reg. § 301.7811–1(b), and it is not clear that she qualified to do so. We similarly reject Carter's attempt to invoke the longer limitations period applying to refund suits under 28 U.S.C. § 1346(a)(1). See I.R.C. § 6532(a). Although, in the abstract, Carter's argument that her wrongful levy suit could be brought under these provisions is linguistically plausible, Carter's case is indisputably covered by the more specific wrongful levy action with its shorter statute of limitations provided in I.R.C. § 6532(c). To conclude otherwise would render I.R.C. 6532(c) superfluous in all cases. See, e.g., Mitchell v. Chapman, 343 F.3d 811, 825 (6th Cir.2003) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

■ Nonetheless, we believe that the statute of limitations cannot be applied to Carter's suit because to do so would violate her constitutional right to procedural due process. On October 19, 2000, when Carter's claim was still timely under any state of the facts alleged by either the Government or Carter, the IRS sent Carter a letter denying her administrative claim and informing her that she had six months—that is, until April 19, 2001—to

file suit in the district court. In reliance on this letter, Carter waited until April 18, 2001, to file her suit, thereby permitting the statute of limitations to expire. The October 19 letter did more than merely incorrectly state the general statute of limitations from the Internal Revenue Code. Rather, it specifically informed Carter of how the statute of limitations applied in her case based on factual information to which Carter was not privy. The letter purported to be based "on an analysis of the facts by our Area Counsel," and it informed Carter that the levy occurred on July 27, 1999. The letter went on to state the limitations period "is 6 months from the date on *this letter,*" (emphasis added), further suggesting that its analysis was specific to Carter's case. The IRS did not inform Carter that it had evidence that the notices had been served sooner, triggering the nine-month statute of limitations over a month prior to the July 27, 1999 date of levy.

A "notice must meet the general 'fairness' requirement of due process." *Planned Investments, Inc. v. United States,* 881 F.2d 340, 344 (6th Cir.1989) (letter from IRS misstated the tax period and formula used to calculate penalty). Here, the IRS informed Carter that she had six months to file her suit. In reliance on the IRS's letter, Carter did not commence her lawsuit until April 18, 2001, which was within the time expressly given to her by the IRS, but outside the proper time limit. As the *Planned Investments* Court explained, we inquire whether the plaintiff has been "prejudiced or misled by

the error and is afforded a meaningful opportunity to litigate [her] claims." *Id. See also Day v. Shalala,* 23 F.3d 1052 (6th Cir.1994) (plaintiffs who were actually injured when they allowed res judicata to attach to the denial of their social security benefits were allowed to reopen their claims on due process grounds).

Here, Carter was misled, to her prejudice, and thus deprived of a meaningful opportunity to litigate her claims. This case is not, as the Government asserts, about whether a letter sent by the IRS can confer *additional* rights. It is about whether the IRS's actions deprived Carter of her opportunity to be heard. Thus, this case is unlike *Williams v. United States,* 947 F.2d 37, 38–40 (2d Cir.1991), for example, where the plaintiff received a letter erroneously stating that he had two years to file suit when the statute of limitations had in fact run four and a half years before he received the letter. The letter did not deprive Williams of an opportunity to be heard because that right had expired prior to the writing of the letter. Here, in contrast, the letter clearly worked to Carter's detriment. She had an unexpired claim which she allowed to expire believing that she had until April 18, 2001, to file.

The Government responds that we should not embrace Carter's due process claim because it is "essentially an equitable estoppel or equitable tolling claim under a different name."[1] Although the facts giving rise to the due process claim and these equitable claims may be the same in some cases, the substance of the claims is different. Our due process inquiry turns on

---

1. Nor is it yet established that equitable estoppel or equitable tolling is unavailable under I.R.C. § 6532(c). *Compare Irwin v. Dept. Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (concluding in the Title VII context that, unless it provides otherwise, Congress intends the rule of equitable tolling to apply to statutes of limitations against the government, and holding "that the

same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"), *with United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (finding that Congress did not intend equitable tolling to be available where it otherwise laid out a detailed and technical statute of limitations in I.R.C.

whether Carter has been deprived by the Government of a meaningful opportunity to litigate her claims after being misled by the government. In fact, it may be precisely because equitable estoppel and equitable tolling are not available against the Government that the due process clause places a limitation on the Government's conduct.

To determine whether an equitable estoppel or equitable tolling claim exists, we examine the statute of limitations to determine the extent of Congress's waiver of sovereign immunity. *See United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997); *Irwin v. Dept. Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). We will not, however, construe a statute of limitations as precluding a claim where doing so would violate due process. *See I.N.S. v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Further, as the cases cited by the Government explain, "in construing the statute of limitations, which is a condition of [the waiver of sovereign immunity], we should not take it upon ourselves to extend the waiver beyond that which Congress intended. *Neither, however, should we assume the authority to narrow the waiver that Congress intended.*" *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (emphasis added; citations omitted). We do not presume that Congress intended to condition its waiver of sovereign immunity on compliance with a statute of limitations even when doing so would violate the procedural due process rights of individuals levied against.

Finally, we reject the Government's argument that Carter was not prejudiced because this was a "legal misrepresentation." Quite simply, it would be reasonable for a reader of the letter, even one who was aware of the alternate limitations period, to conclude that the IRS had determined that the six-month limitations period applied because the IRS had determined that it had not served the notices of levy prior to July 19, 1999, especially given that the letter stated that the levy did not occur until July 27, 1999. This is especially so in wrongful-levy situations where the statute does not require that the original notice of levy be sent to individuals in Carter's position, and the IRS knows or should know that dates regarding the levy are in its possession and not in the possession of claimants.

## III.

Having concluded that Carter's claim is not barred by the statute of limitations, we AFFIRM on the district court's well-reasoned opinion.

§ 6511, which is reiterated several times within the section). Because Carter does not raise these claims, we do not consider them here.