T.C. Summary Opinion 2008-39

UNITED STATES TAX COURT

SUZANNE V. THOMPSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20009-06S.                    Filed April 16, 2008.

Michael Neil Gendelman, for petitioner.

Daniel J. Parent, for respondent.

DEAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a request for relief from joint and several liability under section 6015(f) with respect to petitioner's unpaid joint tax liabilities for 1995 through 1997. The issues for decision are whether:  (1) The "section 6330 notice" issued to petitioner is valid; (2) petitioner's request for relief from joint and several liability was timely; and (3) petitioner is entitled to relief from joint and several liability under section 6015(f) for each year.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference.  At the time the petition was filed, petitioner resided in California.

Petitioner married Mr. Thompson in 1979.  During the first part of the marriage, petitioner did not work outside of the home.  Petitioner started working as an administrative assistant for her current employer, IA Interior Architects, in November 1994.[1]  Mr. Thompson was employed as a certified public accountant, specializing in tax controversies, audits, and tax returns; he opened his own firm around 1989.

---

[1]  The record does not contain any information as to petitioner's education level.

Petitioner and Mr. Thompson filed a joint Form 1040, U.S. Individual Income Tax Return, for each of the years at issue. The Federal income tax returns were filed without remittance of the taxes due. The assessed taxes, as of the date of filing, are summarized as follows:

| Year | Tax shown on return |
|------|---------------------|
| 1995 | $14,977 |
| 1996 | 9,733 |
| 1997 | 9,294 |

No notices of deficiency were issued.

Petitioner and Mr. Thompson separated in 1997, and petitioner was referred by the Battered Women of Contra Costa County to an attorney, Mr. Moats. Mr. Moats represented petitioner in her divorce and bankruptcy proceedings. Petitioner filed for bankruptcy in March 1999. Petitioner's unpaid tax liabilities for 1988 through 1994 were discharged on June 16, 1999; the unpaid tax liabilities for 1995 through 1997 were not discharged.

Mr. Thompson filed for divorce in November 1998, and it became final on December 29, 1999. The divorce decree provides that petitioner and Mr. Thompson were to remain jointly liable for the payment of the Federal income tax liabilities for 1995 through 1997. Petitioner was to negotiate her tax liabilities "to the lowest total amount and monthly payments possible" by submitting an offer-in-compromise (OIC) to the Internal Revenue

Service (IRS).  Thereafter, Mr. Thompson agreed to pay petitioner 50 percent of each monthly payment.  The divorce decree reserved Mr. Thompson's rights to discharge his tax liabilities for 1986 through 1997 in bankruptcy or to submit an OIC.  Mr. Thompson filed for bankruptcy, and his unpaid tax liabilities for 1988 through 1997 were discharged on June 4, 2004.

On August 30, 2000, the IRS issued a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320, to petitioner and Mr. Thompson for 1996 and 1997.  The notice, however, was addressed to Mr. Thompson's place of business.

On October 13, 2003, the IRS issued to petitioner seven Notices CP 504, "Urgent!! We intend to levy on certain assets. Please respond NOW", stating that the IRS intended to levy upon petitioner's assets for 1988 through 1990, 1993, and 1995 through 1997.  Each notice showed a "Current Balance" for the referenced year even though petitioner's tax liabilities for 1988 through 1994 had been discharged in bankruptcy.  In response, petitioner contacted the IRS and Mr. Moats to resolve her tax matters.

On October 28, 2003, the IRS issued to petitioner a section 6330 notice; i.e., a Letter 1058, Final Notice of Intent to Levy And Notice of Your Right to a Hearing.  The section 6330 notice included references to years and tax liabilities that had been discharged in bankruptcy and is reproduced as follows:

| Tax type | Year | Tax Assessed | Interest | Penalty | Total |
|---|---|---|---|---|---|
| 1040 | 1988 | $2,299.81 | $602.14 | -0- | $2,901.95 |
| 1040 | 1989 | 16,679.32 | 4,583.03 | -0- | 21,262.35 |
| 1040 | 1990 | 12,773.58 | 3,539.61 | -0- | 16,313.19 |
| 1040 | 1993 | 23,541.93 | 6,471.93 | -0- | 30,013.86 |
| 1040 | 1995 | 12,051.08 | 9,221.13 | $2,754.24 | 24,026.45 |
| 1040 | 1996 | 497.17 | 207.65 | 14.80 | 719.62 |
| 1040 | 1997 | 5,204.43 | 1,613.16 | 624.08 | 7,441.67 |
| Total amount due | | | | | 102,679.09 |

On September 14, 2004, the IRS issued to petitioner a Letter 2050, Please Call US About Your Overdue Taxes or Tax Returns. The notice is reproduced as follows:

| Tax type | Year | Tax Assessed | Interest | Penalty | Total |
|---|---|---|---|---|---|
| SPASMT | 1995 | $12,051.08 | $11,243.10 | $2,754.24 | $26,048.42 |
| SPASMT | 1996 | 497.17 | 274.64 | 14.80 | 786.61 |
| SPASMT | 1997 | 5,204.43 | -0- | 624.08 | 5,828.51 |
| Total amount due | | | | | 32,663.54 |

On September 19, 2005, the IRS issued to petitioner a Notice CP 49, Overpaid Tax Applied to Other Taxes You Owe, informing petitioner that the IRS applied her $40.51 refund for 2004 to her account.

Sometime in December 2005, petitioner was referred by the State Bar of California to her present counsel, who filed petitioner's Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief). Petitioner's prior counsel, Mr. Moats, disappeared and did not return petitioner's file until the 2-year limitations period had expired. The State bar issued an order on July 8, 2005, declaring Mr. Moats ineligible to practice law. Mr. Moats

tendered his resignation with charges pending on October 20, 2005, effective December 4, 2005.

Petitioner's request for relief, received by respondent on March 20, 2006, was denied because it was received more than 2 years after the first collection activity, the section 6330 notice issued October 28, 2003.

## Discussion

### I.  Joint and Several Liability and Section 6015(f) Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  But the IRS may relieve a taxpayer from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and he does not qualify for relief under section 6015(b) or (c).  Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to relief.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

### II.  2-Year Limitations Period

Section 1.6015-5(b)(1), Income Tax Regs., provides that an electing spouse must apply for relief no later than 2 years from the date of the IRS's first collection activity against the

electing spouse after July 22, 1998. The term "collection activity" is defined to include a section 6330 notice, which is also defined as the notice the IRS sends to taxpayers informing them of the IRS's intent to levy and their right to request a hearing. See sec. 1.6015-5(b)(2)(i) and (ii), Income Tax Regs.

Respondent argues that the section 6330 notice is valid despite including references to years and tax liabilities that had been discharged in bankruptcy. Respondent alleges: "Although there may have been some confusion over whether petitioner was liable" for 1988 through 1990 and 1993, "there was no confusion as to whether petitioner was liable" for 1995 through 1997. According to respondent, petitioner knew that she had tax liabilities for 1995 through 1997, and she knew how much she owed for each year. Respondent further asserts that petitioner could have filed for relief at any time during the 2-year period, and the IRS's representations had "no bearing on petitioner's ability to file a timely request". Finally, respondent argues that because petitioner's request for relief was untimely, he did not abuse his discretion by denying the requested relief.

## III. Validity of the Section 6330 Notice

As a general rule, notices containing technical defects are valid unless the taxpayer has been prejudiced or misled by the error and he has not been afforded a meaningful opportunity to

litigate the claim.  See <u>Estate of Yaeger v. Commissioner</u>, 889 F.2d 29, 35 (2d Cir. 1989) (deficiency notice referenced wrong year but attachments referenced correct year), affg. T.C. Memo. 1988-264; <u>Planned Invs., Inc. v. United States</u>, 881 F.2d 340, 343 (6th Cir. 1989) (notice of assessment referenced wrong period but taxpayer knew correct period from contacts with IRS); see also <u>Sanderling, Inc. v. Commissioner</u>, 571 F.2d 174, 176 (3d Cir. 1978) (deficiency notice is valid if a taxpayer has not been misled as to the year or amount involved; notice was valid since it referenced correct year and transaction despite references to wrong years), affg. 66 T.C. 743, 749 (1976); <u>Petaluma FX Partners, LLC v. Commissioner</u>, T.C. Memo. 2007-254 (a notice containing errors as to the taxable year may still be valid where the taxpayer reasonably could not be misled as to the taxable period involved); <u>United States v. Rabinovici</u>, 99 AFTR 2d 2007-1812, 2007-1 USTC par. 50,467 (E.D.N.Y. 2007) (section 6330 notice referenced wrong period for an assessed trust fund recovery penalty).  Notices "'must meet the general 'fairness' requirement of due process.'"  <u>Estate of Yaeger v. Commissioner</u>, <u>supra</u> at 35 (quoting <u>Planned Invs., Inc. v. United States</u>, <u>supra</u> at 344).

The Court has stated that in determining whether a notice is valid despite an error, it looks at the notice, any attachments, and the circumstances surrounding the notice's issuance and

receipt to determine whether the taxpayer could have been reasonably confused or misled. See Upchurch v. Commissioner, T.C. Memo. 2007-181 (deficiency notice referencing wrong year was valid since attachments referenced correct year and transactions; taxpayer referenced correct year in his written protest and participated in 3 years of review with the IRS before its issuance).

If there is a requisite showing of prejudice or detriment to the taxpayer because of the IRS's actions, the IRS may be precluded from claiming the benefit of a limitations period. See Stallard v. United States, 12 F.3d 489, 491-492, 496 (5th Cir. 1994) ("Bureaucratic ineptitude and indifference" combined with the IRS's admissions that the Form 23C contained the wrong tax period made the summary record invalid); see also United States v. Rabinovici, supra at 2007-1819, 2007-1 USTC par. 50,467, at 88,290 (if a taxpayer is misled or prejudiced as a result of the IRS's use of a date identifier in a section 6330 notice, then the IRS should be estopped from claiming the benefit of the suspension of the limitations period); Carter v. United States, 110 Fed. Appx. 591, 595-596 (6th Cir. 2004) (taxpayer was denied procedural due process where IRS letter erroneously informed taxpayer of the limitations period, and she allowed her claim to expire since she believed that she had until that date to file suit); cf. Century Data Sys., Inc. v. Commissioner, 86 T.C. 157

- 10 -

(1986) (IRS could not issue a corrected notice of deficiency after the statute of limitations for assessing the tax had expired); Cary v. Commissioner, 48 T.C. 754, 766 (1967) (Form 872 was invalid where a revenue agent altered the tax period without the taxpayer's consent).

As respondent contends, it is plausible that petitioner was not misled or prejudiced given that petitioner knew 1988 through 1990 and 1993 had been discharged in bankruptcy while 1995 through 1997 had not.  On the other hand, while taking into account the circumstances of the issuance and receipt of the section 6330 notice, it is also plausible that petitioner may have been prejudiced or misled.  Because petitioner's section 6330 notice referenced years and liabilities that had been discharged in bankruptcy, she telephoned respondent's collections office on October 21, 2003.  Petitioner testified about her remembrances of her contacts with the IRS:

> (1) A collections officer informed petitioner that the tax for those 4 years had not been discharged in bankruptcy, the officer could not delay collection activity, petitioner should file an OIC promptly, and petitioner should contact respondent's bankruptcy office;

> (2) Ms. Bustamente[2] informed petitioner that the tax for the 4 years had been removed but added back in, and she would have to figure it out because the IRS's records were

---

[2]  It was represented that Ms. Bustamente is a bankruptcy specialist in respondent's collections insolvency office.

not appropriately associated with petitioner's Social Security number.  Allegedly, Ms. Bustamente also informed petitioner that she could not file an OIC because her account was frozen, collections could not take any action against her, and no one could do anything until her account was correct;

(3) Ms. Bustamente contacted petitioner on April 1, 2004, to inform petitioner that her account had been corrected, and she remained jointly liable for 1995 through 1997.  Allegedly, Ms. Bustamente also advised petitioner that she could not submit an OIC until Mr. Thompson was discharged from bankruptcy because a joint tax return was filed and collections could not take any action against her until his bankruptcy was closed.  Allegedly, Ms. Bustamente stated that the IRS would notify petitioner when Mr. Thompson was out of bankruptcy;

(4) petitioner called the IRS's collections office monthly to confirm her "extension".  But petitioner stopped calling in May 2005 because a collections officer, allegedly, told her to quit calling, her account was clear, there was no attempt to collect from her, Mr. Thompson was still in bankruptcy, petitioner was wasting the IRS's time, and if the IRS needed petitioner, they would contact her; and

(5) petitioner contacted the collections office and Ms. Bustamente after receiving the letter 2050.  Ms. Bustamente informed petitioner that Mr. Thompson received a discharge in mid-2004.  Petitioner testified that she commented:  "you mean to tell me that when the IRS told me not to call them anymore, that there was no effort to collect from me * * * Fred had already been discharged", and Ms. Bustamente allegedly replied "apparently so.  Well, we're behind in our posting."

Although respondent did not challenge the substance of petitioner's testimony, the Court, nevertheless, finds that petitioner has not proven that she was misled or prejudiced with respect to the notice's issuance and her receipt thereof.  See Upchurch v. Commissioner, supra.  There is no evidence in the

record establishing that petitioner was misled or prejudiced other than her self-serving testimony and her notes of her conversations with IRS personnel. Neither Ms. Bustamente nor the collections officers were called as witnesses.[3] Neither Ms. Bustamente's nor the collections officers' "Case Activity Records" or other "workpapers" were entered into evidence, and it has not been established that Ms. Bustamente was, under the circumstances, required to make a report or other notation of the content of petitioner's telephone calls. Simply put, the Court does not accept petitioner's self-serving testimony. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960).

The parties agree that respondent sent the following enclosures to petitioner with her section 6330 notice: (1) A blank Form 12153, Request for a Collection Due Process Hearing; (2) Publication 594, What You Should Know About the IRS Collection Process; and (3) Publication 1660, Collection Appeal Rights. Although the section 6330 notice and pages 2 and 3 of Publication 594 invite taxpayers to "call us * * * at the telephone number" provided, the section 6330 notice and Publication 594 also explain that a taxpayer must request a

---

[3] It was represented that Ms. Bustamente recalls having conversations with petitioner but claims to have no recollection of the substance of the conversations.

- 13 -

hearing (CDP hearing) within 30 days of the date on which the section 6330 notice was issued. Publication 594 also explains the issues that may be discussed at the CDP hearing, including bankruptcy matters, errors in assessment, and spousal defenses. Publication 1660 describes the procedures for requesting a CDP hearing, the process thereafter, and the issues that may be raised at the CDP hearing; e.g., spousal defenses.

Had petitioner requested a CDP hearing as prescribed by the section 6330 notice and its enclosures, rather than simply calling the IRS's collections office, she could have protected herself by challenging the liabilities and raising a spousal defense at her CDP hearing as contemplated by section 6330.[4] Petitioner was represented by counsel who should have filed, or advised his client to file, either a request for a CDP hearing or a timely request for relief from joint and several liability pursuant to section 6015(f), notwithstanding the ambiguous language inviting taxpayers to "call us".

The Court also notes that petitioner failed to submit an OIC as directed by her 2000 divorce decree. To a limited extent, petitioner could have protected herself by submitting the OIC and

---

[4] Sec. 6330(a) affords taxpayers the right to notice and an opportunity for a hearing before the Commissioner can proceed with the collection of a tax by levy. The taxpayer must request the hearing during the 30-day period that commences the day after the date of the section 6330 notice. See sec. 301.6330-1(c)(1), Proced. & Admin. Regs.

by seeking reimbursement from Mr. Thompson. Petitioner failed to exercise her rights with respect to Mr. Thompson and is now attempting to use that failure as a basis for proceeding against the Government via a request for relief from joint and several liability. Finally, petitioner may still be able to file an OIC, and it appears that she may still be able to enforce the agreement with Mr. Thompson as directed by her divorce decree.

The Court finds that, on the basis of all the facts and circumstances, the section 6330 notice issued to petitioner on October 28, 2003, is valid.

IV. Equitable Estoppel[5]

Petitioner has made an argument sounding in estoppel. To establish equitable estoppel against the Government in the Ninth Circuit,[6] a litigant must show the following: (1) The party to be estopped must know the facts; (2) he must intend that his conduct be acted on or must so act that the party asserting estoppel has a right to believe it is intended; (3) the party asserting estoppel must be ignorant of the true facts; (4) the

---

[5] The Court may apply equitable principles to cases properly within its jurisdiction. See Estate of Ashman v. Commissioner, 231 F.3d 541, 545 (9th Cir. 2000) (and the cases cited thereat), affg. T.C. Memo. 1998-145.

[6] But for sec. 7463(b), an appeal would lie with the Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(A). Therefore, the Court follows the law of that circuit. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

party asserting estoppel must rely on the former's conduct to his detriment; (5) affirmative misconduct by the Government going beyond mere negligence; (6) the Government's misconduct will cause a serious injustice; and(7) the public's interest will not suffer undue damage.[7]  See <u>United States v. Ruby Co.</u>, 588 F.2d 697, 703 (9th Cir. 1978); see also <u>Morgan v. Heckler</u>, 779 F.2d 544, 545 (9th Cir. 1985).

Even if the Court were to accept petitioner's unsupported, self-serving testimony as to the IRS's representations, the Court concludes that petitioner has not established the elements for estoppel.  It is well settled that a Government agent's providing inaccurate information does not constitute affirmative misconduct.  See <u>Socop-Gonzalez v. INS</u>, 272 F.3d 1176, 1184 (9th Cir. 2001) (negligently providing misinformation or incorrect advice is not affirmative misconduct); <u>United States v. Manning</u>, 787 F.2d 431, 436 (8th Cir. 1986); <u>Sec. Settlement Corp. v. Jachera</u>, 772 F. Supp. 770, 774 (S.D.N.Y. 1991); see also <u>Porter</u>

---

[7]  The Court applies a similar test for equitable estoppel. The party must show:  (1) A false representation or wrongful, misleading silence by the party against whom estoppel is to be invoked; (2) an error in a statement of fact and not an opinion or statement of law; (3) ignorance of the true facts; (4) reasonable reliance on the act or statement; (5) a detriment suffered because of the false representation or wrongful, misleading silence; and (6) affirmative misconduct by the Government.  See <u>Wright v. Commissioner</u>, T.C. Memo. 2005-5 (and cases cited therein).

<u>v. IRS</u>, 84 AFTR 2d 99-6994, at 99-6997, 99-2 USTC par. 50,977, at 90,293 (S.D. Iowa 1999).

V.  <u>Equitable Tolling</u>[8]

   A.  <u>IRS's Representations</u>

The central premise of equitable tolling is that the person is excusably ignorant of the limitations period.[9]  See <u>Supermail Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1207 (9th Cir. 1995). But equitable tolling is not available to avoid the consequences of one's own negligence.  See <u>Lehman v. United States</u>, 154 F.3d 1010, 1016 (9th Cir. 1998).  In order for equitable tolling to apply, petitioner must establish that she has been pursuing her rights diligently and one of the following additional

---

[8]  See <u>supra</u> notes 5 and 6 and accompanying text.

[9]  The limitations period specified in sec. 1.6015-5(b)(1), Income Tax Regs., is not statutorily prescribed with respect to sec. 6015(f).  Respondent did not challenge petitioner's argument that equitable tolling applied, and no arguments were raised as to whether the limitations period has been effectively incorporated into sec. 6015(f) via the Secretary's interpretation or whether that interpretation is reasonable.  See <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-843 (1984); <u>Natl. Muffler Dealers Association v. United States</u>, 440 U.S. 472, 488-489 (1979).  For the sake of argument, the Court assumes that the limitations period has not been effectively incorporated.  Compare <u>United States v. Brockamp</u>, 519 U.S. 347, 352 (1997) (stating that the detailed, technical language of sec. 6511, as well as its specific exceptions, indicated that Congress did not intend for equitable tolling to apply to sec. 6511), with <u>Doe v. KPMG, LLP</u>, 398 F.3d 686, 690 (5th Cir. 2005) (equitable tolling does not apply to the 3-year limitations period of sec. 6501), and <u>Jones v. Commissioner</u>, T.C. Memo. 2003-29 (equitable tolling does not apply to the 30-day limitations period of sec. 6330(d)(1)).

circumstances: (1) She filed a timely, yet defective, pleading; (2) she was induced or misled by the Government's misconduct; or (3) extraordinary circumstances beyond her control prevented her from filing timely. See <u>Huseman v. Icicle Seafoods, Inc.</u>, 471 F.3d 1116, 1121 (9th Cir. 2006) (stating that due diligence is a requirement to equitable tolling); <u>Seattle Audubon Soc. v. Robertson</u>, 931 F.2d 590, 595 (9th Cir. 1991); see also <u>Anderson v. United States</u>, 220 Fed. Appx. 479, 481 (9th Cir. 2007) (citing <u>Irwin v. VA</u>, 498 U.S. 89 (1990)).[10]

Petitioner's testimony that the IRS's personnel advised petitioner that her account was frozen and no one could do anything until the accounts were segregated and Mr. Thompson received a discharge in bankruptcy is unsupported, self-serving testimony that the Court is reluctant to rely on. Thus, the Court finds that the equities do not favor tolling.

B. <u>Attorney Malfeasance</u>

Petitioner sent the section 6330 notice and its enclosures to her attorney for his consideration. There is, therefore, the implication that he had a duty to act appropriately on the information and failed to do so.

---

[10] The Court has applied a similar test: a taxpayer seeking to apply equitable tolling must show, at a minimum, that the IRS did something that reasonably induced him to believe that the limitations period was being tolled or extended. See <u>Hodel v. Commissioner</u>, T.C. Memo. 1996-348 (citing <u>First Ala. Bank v. United States</u>, 981 F.2d 1226, 1228 (11th Cir. 1993)).

As a general rule, attorney negligence is not grounds for invoking equitable estoppel.  See Miranda v. Castro, 292 F.3d 1063, 1067-1068 (9th Cir. 2002); see also Schlueter v. Varner, 384 F.3d 69, 76 (3d Cir. 2004); Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam ); Sandvik v. United States, 177 F.3d 1269, 1270 (11th Cir. 1999); Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1179-1180 (6th Cir. 1995).

But the Court of Appeals for the Ninth Circuit and some of the other Courts of Appeals have created an exception to the general rule.  Those courts have equitably tolled a limitations period where the client diligently pursued his claim and the attorney's conduct was so egregious as to constitute an extraordinary circumstance.  See Spitsyn v. Moore, 345 F.3d 796, 799-801 (9th Cir. 2003) (attorney failed to prepare and file petition despite numerous contacts by his client and did not return his client's file, despite his client's request to do so, until the limitations period had expired); Baldayaque v. United States, 338 F.3d 145, 150-153 (2d Cir. 2003) (attorney failed to file a motion despite his client's directives to do so, he performed no legal research, he gave erroneous advice, he never spoke with or met his client, and he failed to locate his client when mail addressed from the attorney to his client was returned); Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 241-242 (3d Cir. 1999) (attorney failed to file petition,

failed to send copies of the complaint to his client, affirmatively lied to his client about doing both, and failed to keep her apprised of the case's status despite her requests); Burton v. U.S. Postal Serv., 612 F. Supp. 1057, 1059-1060 (N.D. Ohio 1985) (attorney abandoned his client when he left town without informing his client and failed to file a timely complaint).

At first blush, petitioner's situation appears to favor tolling.  Mr. Moats did not file, nor, as far as it appears from the record, advise his client to file, a timely request for relief from joint and several liability or a request for a CDP hearing.  Mr. Moats disappeared and did not return petitioner's file until the limitations period had expired--apparently, a few weeks before trial.  Mr. Moats has been found ineligible to practice law by his State bar, and he has resigned with charges pending.

Insufficient evidence, however, was submitted to the Court for it to make a determination as to whether the circumstances justify invoking equitable tolling.  Mr. Moats's failure to file, or failure to advise his client to file, a request for a CDP hearing or a request for relief from joint and several liability under section 6015(f) may have been a tactical decision, and no evidence was presented as to these issues.  No evidence was submitted as to the misconduct that led to Mr. Moats's

resignation or whether petitioner was one of the complainants who had brought charges against Mr. Moats.

With so many holes in the record, the Court finds that equitable tolling does not apply. See <u>Auker v. Commissioner</u>, T.C. Memo. 1998-185 (rejecting a witness's opinion as to a valuation because it was "full of holes"); <u>Kantezke v. Commissioner</u>, T.C. Memo. 1991-152 (rejecting a taxpayer's evidence because it was based on assumptions that were "full of holes"); <u>Vicknair v. Commissioner</u>, T.C. Memo. 1990-434 (rejecting a taxpayer's testimony because it was "full of holes").

VI.   <u>Extension of the Limitations Period</u>

Petitioner contends that the 2-year limitations period was extended on account of various extensions granted by the IRS to petitioner because of the:  (1) Time the IRS needed to segregate the accounts; (2) IRS's representations that neither it nor petitioner could do anything until Mr. Thompson received a discharge in bankruptcy; or (3) period in which petitioner was preparing an OIC.

There is nothing in the record establishing that the IRS granted extensions to petitioner other than petitioner's self-serving testimony, on which the Court is reluctant to rely.

The Court does not agree that the IRS's representations served to create an extension of the limitations period.  This argument is nothing more than a backdoor attempt at estoppel,

which the Court has already rejected.  Additionally, there is nothing in the record other than petitioner's testimony showing that the statements were made.

In the context of an OIC, section 301.7122-1(i), Proced. & Admin. Regs., provides that the statute of limitations on collection will be suspended in limited circumstances.  No similar provision applies with respect to the 2-year limitations period for requests for relief from joint and several liability under section 6015.  The Court cannot read a suspension provision into the regulation.[11]  Cf. <u>Baltzell v. Mitchell</u>, 3 F.2d 428, 430 (1st Cir. 1925) (stating that courts cannot read words that are not present into a statute); <u>Fleming v. Commissioner</u>, 6 B.T.A. 900, 907 (1927) (same).

VII.  <u>Timeliness of Petitioner's Request for Relief</u>

Petitioner contends that because the section 6330 notice was invalid when issued, respondent's collection activity did not commence on October 28, 2003.  According to petitioner, the earliest that respondent's collection activity may have commenced was April 2004 when Ms. Bustamente informed petitioner about the

---

[11]  Even if the Court were to find that the 2-year limitations period for requesting relief from joint and several liability was suspended on account of a submission of an OIC, suspension would not apply as petitioner failed to file an OIC as required by the regulations.  Thus, an OIC was not pending within the meaning of the regulations.  Cf. sec. 301.7122-1(d)(2), (g)(1), (i), Proced. & Admin. Regs.

correct amount of tax petitioner owed for each year.  Thus, petitioner's March 20, 2006, request for relief was timely.

Because the Court has determined that the section 6330 notice issued to petitioner on October 28, 2003, was valid and that equitable principles do not preclude application of the 2-year limitations period, the Court finds that her request for relief from joint and several liability was untimely.  Because her request for relief was untimely, she is not entitled to relief, and respondent did not abuse his discretion in denying her request.  See Butler v. Commissioner, 114 T.C. 276, 292 (2000) (IRS's denial of a request for relief from joint and several liability under section 6015(f) is reviewed for abuse of discretion).  Accordingly, respondent's determination is sustained.

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, and/or moot.

To reflect the foregoing,

Decision will be entered for respondent.