T.C. Memo. 2005-5


UNITED STATES TAX COURT


THOMAS G. WRIGHT AND ESTATE OF ROSEMARY K. WRIGHT, DECEASED,
THOMAS G. WRIGHT, PERSONAL REPRESENTATIVE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9988-03.                    Filed January 13, 2005.


        Ps excluded a portion of H's disability benefits
from gross income for the 1999 and 2000 taxable years.
R determined that Ps were required to include in gross
income an additional portion of H's benefits.

        <u>Held</u>:  Ps are not entitled under sec. 105,
104(a)(3), or 72, I.R.C., to exclude from gross income
disability retirement benefits in an amount greater
than permitted by R.

        <u>Held</u>, <u>further</u>, R is not precluded from making
adjustments to Ps' gross income by reason of R's
decision not to adjust prior years' income.


<u>James R. Cooper</u>, for petitioners.

<u>Richard J. Hassebrock</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for their 1999 and 2000 taxable years in the amounts of $3,347 and $4,570, respectively. The issues for decision are:

(1) Whether, pursuant to section 105[1], 104(a)(3), or 72 petitioners may exclude from gross income a portion of payments received by Thomas G. Wright (Mr. Wright) from the State Teachers Retirement System of Ohio (STRS) in excess of the amount determined by respondent to be nontaxable; and

(2) if not, whether respondent is nonetheless barred from making adjustments to petitioners' gross income with respect to Mr. Wright's STRS payments for the taxable years 1999 and 2000 since respondent had previously declined to make similar adjustments in prior tax years.

FINDINGS OF FACT

I. Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Granville, Ohio.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Mr. Wright was born on September 22, 1930.  Mr. Wright worked for the Ohio Public School System for 21 years, the first 10 years as a high school teacher and the remaining 11 years as a high school principal.  During his tenure, Mr. Wright was a member of STRS.  In February 1977, Mr. Wright suffered a mental and emotional breakdown which left him permanently disabled with respect to his teaching profession.  Mr. Wright was granted disability retirement in August of 1977 from the Ohio Public School System and his job as the principal of Granville High School in Granville, Ohio.

From 1977 to 1983, Mr. Wright reported disability retirement benefits received from STRS primarily as ordinary income in accordance with the Forms 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts, Etc.  In 1983, after talking to friends and family members and after his own investigation of Internal Revenue Service (IRS) publications, Mr. Wright decided to treat his benefits as 60 percent includable in gross income and 40 percent excludable from gross income based on his alleged 8-percent contribution rate and an alleged 12-percent contribution rate by

his employer.[2]  This exclusion rate, thus determined, was much greater than the exclusion rate determined by STRS.

In 1999, Mr. Wright received $33,123.90 in distributions from STRS.  A Form 1099-R issued to Mr. Wright for 1999 indicated a taxable distribution in the amount of $32,128.50 and employee contributions or insurance premiums in the amount of $995.40. In 2000, Mr. Wright received $45,506.66 in distributions from STRS. The Form 1099-R issued to Mr. Wright for 2000 indicated a taxable distribution in the amount of $44,511.26 and employee contributions or insurance premiums in the amount of $995.40. The $995.40 amounts listed on the Forms 1099-R represent a tax-free recovery of previously taxed employee contributions to the plan.  STRS used the exclusionary ratios under section 72(b) in calculating the amount of disability retirement benefits paid to Mr. Wright attributable to his contributions to STRS.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for each of the years 1999 and 2000.  On these returns, they reported as taxable $19,278 and $26,707 of the distributions received by Mr. Wright from STRS in 1999 and 2000,

_____

[2] Mr. Wright's testimony on this point is contradictory.  He initially indicated that he contributed 12 percent and that the six various school boards for which he worked contributed 8 percent in the latter years of his employment.  But later in his testimony, he indicated that he contributed 8 percent and the school boards contributed 12 percent.  It appears that the latter testimony is his position based on Mr. Wright's reaffirmation of these percentage allocations during trial.

respectively. On April 1, 2003, respondent issued to petitioners the notice of deficiency underlying the instant proceeding, determining that petitioners were required to include in income STRS distribution amounts in excess of those reported by petitioners. The statutory notice indicated that only $995.40 was nontaxable for each of the years in issue.

Prior to issuing the notice of deficiency for 1999 and 2000, respondent had contacted petitioners on four occasions questioning whether petitioners were properly excluding the correct portion of Mr. Wright's disability retirement payments from their gross income for the taxable years 1989, 1994, 1997, and 1998. In each of those instances, respondent chose not to adjust petitioners' taxable income.

## II. The State Teachers (Disability) Retirement System of Ohio

In order to be eligible for disability retirement under STRS, a member must be: (1) Under the age of 60 and no longer teaching; (2) have 5 or more years of Ohio service credit; (3) be disabled, physically or mentally, for teaching service; (4) if mentally and physically able to do so, file an application with STRS within 2 years from the date contributing service is terminated, unless the disability is manifested in some degree (as evidenced by medical records) before the contributing service is terminated; and (5) may not be receiving service retirement benefits. The evidence indicates that Mr. Wright satisfied these

eligibility requirements.  He applied for disability retirement benefits from STRS in February 1977, and his application was approved that same year.

The STRS Employer's Manual sets forth the required contribution rates for STRS members and their employers.  These contribution rates show the percentage of each member's compensation contributed to STRS by the member and by the employer.  STRS also published a brochure entitled "Disability Retirement" describing the program, including sections on eligibility requirements and taxes.  Notably, the STRS publications do not indicate any specific portion of an employee's contribution which funds the disability benefit.

Neither the extent nor severity of the disability affects the computation of the amount of disability benefits.  Ohio Rev. Code Ann. section 3309.40 (Anderson 2002) directs calculation of the benefit based on the sum of the following:  (1) The number of Ohio service credits actually earned by the member, and (2) the difference between the member's age upon disability retirement and age 60.[3]  The resulting sum is then multiplied by the "final average salary", which is the average of the 3 highest years of earnings, and a specified factor.  Therefore, the amount that a

---

[3] The total disability retirement benefit cannot be less than 30 percent nor more than 75 percent of the member's final average salary.  Ohio Rev. Code Ann. sec. 3309.40 (Anderson 2002).

member contributes to the disability benefit program is not a factor in the benefit calculation.

OPINION

I.  Contentions of the Parties

Both parties agree that at least a portion of Mr. Wright's disability retirement payments is includable in his gross income and that a portion of the payments may be excludable for the 1999 and 2000 taxable years.[4]  The parties disagree as to the exclusion ratio for the payments.

Petitioners principally contend that the disability retirement payments are subject to the rules set forth under section 105(a) and (e) for amounts received under accident and health plans and are, therefore, excludable from gross income to the extent of employee contributions to the plan.  Petitioners further maintain that their calculations based on a 40-percent employee contribution are correct.  In the alternative, petitioners argue that because respondent chose not to contest petitioners' treatment in prior taxable years, respondent is precluded from attempting to make adjustments to their 1999 and 2000 returns.

--------

[4] At trial, respondent initially stated that petitioners were not allowed to exclude any disability payments received in 1999 or 2000 from gross income.  However, the notice of deficiency allowed an amount excludable from gross income as determined by STRS, and respondent has not sought an increase in the amount of deficiency.

Respondent's primary position is that petitioners must include in gross income the amount of disability payments designated as taxable by STRS because they failed to prove a greater exclusion ratio or amount excludable from gross income.[5] In addition, respondent argues that respondent should not be estopped from asserting deficiencies in petitioners' 1999 and 2000 taxable years merely because respondent declined to make adjustments in prior years. In support of this claim, respondent points out that petitioners do not satisfy the requirements of laches, equitable estoppel, or collateral estoppel.

## II. Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although section 7491 may shift the burden to respondent in specified circumstances, petitioners here have not established that they meet the prerequisites under section 7491(a)(1) and (2) for such a shift. Rather, petitioners did not dispute that they bear the burden.

---

[5] See supra note 4.

III. <u>Taxability of the Disability Retirement Benefit</u>

    A.    <u>Gross Income</u>

Section 61(a) specifies that, "Except as otherwise provided", gross income includes "all income from whatever source derived".  The construction of section 61 is broad, and any "'exclusions to income must be narrowly construed.'" <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995)(quoting <u>United States v. Burke</u>, 504 U.S. 229, 248 (1992)(Souter, J., concurring in judgment)).  Taxpayers seeking an exclusion from gross income must demonstrate they are eligible for the exclusion and bring themselves "within the clear scope of the exclusion".  <u>Dobra v. Commissioner</u>, 111 T.C. 339, 349 n.16 (1998).

Annuities and pensions are enumerated among the forms of income within the purview of section 61(a).  Sec. 61(a)(9), (11).  Section 72 elaborates on section 61(a)(9) and (11) by providing specific rules applicable to taxation of, inter alia, annuities and distributions from qualified employer retirement plans.  See also sec. 402(a).  Section 72(a) reiterates the general rule of inclusion in gross income, unless otherwise provided.  Section 72(b),[6] however, provides otherwise to the extent of permitting

---

[6] SEC. 72.    ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND
               LIFE INSURANCE CONTRACTS.

    (b)  Exclusion Ratio.--

        (1) In general.--Gross income does not
                           (continued...)

use of an exclusion ratio to except from gross income amounts proportionate to the taxpayer's investment in the contract.

Ohio Rev. Code Ann. section 3307.63(A) and (B) (Anderson 2002) provides that STRS disability retirement payments comprise both an annuity and a pension. STRS calculated the amount excludable from petitioners' gross income under section 72(b) to be $995.40 in each of the years 1999 and 2000. The notice of deficiency accepts this computation.

B.   Section 105

Petitioners seek to obtain a greater exclusion through the application of section 105. Section 105 addresses the treatment of amounts received under employer-provided accident and health insurance.[7] Courts have recognized that a plan subject to

---

[6](...continued)
      include that part of any amount received as an
      annuity under an annuity, endowment, or life
      insurance contract which bears the same ratio to
      such amount as the investment in the contract (as
      of the annuity starting date) bears to the
      expected return under the contract (as of such
      date).

[7] SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS

      (a)   Amounts Attributable to Employer
Contributions.--Except as otherwise provided in this
section, amounts received by an employee through
accident or health insurance for personal injuries or
sickness shall be included in gross income to the
extent such amounts (1) are attributable to
contributions by the employer which were not includible
in the gross income of the employee, or (2) are paid by
the employer.

                                        (continued...)

section 105 may be encapsulated in a qualified retirement plan. See, e.g., Berman v. Commissioner, 925 F.2d 936, 938-939 (6th Cir. 1991), affg. T.C. Memo. 1989-654; Caplin v. United States, 718 F.2d 544, 548-549 (2d Cir. 1983); Wood v. United States, 590 F.2d 321, 323 (9th Cir. 1979).  Additionally, section 105(e)(2) provides that amounts received under a disability fund maintained under State law are treated as received through accident or health insurance.  See, e.g., Rosen v. United States, 829 F.2d 506, 509 (4th Cir. 1987); Beisler v. Commissioner, 814 F.2d 1304, 1306 (9th Cir. 1987); Trappey v. Commissioner, 34 T.C. 407, 408 (1960).

The general rule of section 105(a) is that amounts received by an employee through accident or health insurance are included in gross income to the extent:  (1) Attributable to contributions by the employer, not included in the gross income of the employee, or (2) paid by the employer.  Stated conversely, amounts received through such insurance are typically excludable

---

[7](...continued)
   (b)  Amounts Expended for Medical Care.* * * gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care * * * of the taxpayer * * *

to the extent attributable to after-tax contributions by the employee.[8]

However, section 105 provides two additional exceptions to includability even for amounts attributable to employer contributions or payments. Section 105(b) excludes amounts expended for medical care. Section 105(c) excludes amounts constituting "payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent" which are computed with "reference to the nature of the injury without regard to the period the employee is absent from work." Courts have interpreted "with reference to the nature of the injury" as referring to the plan distributions varying with respect to the type and severity of the injury. Berman v. Commissioner, supra at 940; Beisler v. Commissioner, supra at 1307.

---

[8] As stated in Merker v. Commissioner, T.C. Memo. 1997-277,

Section 104(a)(3) excludes from gross income amounts received by an employee "through accident or health insurance for personal injuries or sickness" except to the extent such amounts are (A) attributable to contributions made by the employer which were not includable in the gross income of the employee, or (B) paid by the employer. Section 105(a) is essentially the mirror image of section 104(a)(3), and, subject to two exceptions, includes in the gross income of an employee amounts received through accident or health insurance for personal injuries or sickness to the extent such amounts are (A) attributable to contributions by the employer which were not includable in the gross income of the employee or (B) are paid by the employer. [Fn. ref. omitted.]

Petitioners acknowledged at trial that the benefits were not designed to reimburse Mr. Wright for any medical expenses. In addition, petitioners did not provide any evidence that the benefit payments received were payments for a permanent loss of use of a member or function of Mr. Wright's body.  Further, the record indicates that the STRS benefits received by petitioners were not based on or paid with reference to the severity of Mr. Wright's injury.  Accordingly, Mr. Wright's benefits are not excludable under these two exceptions.

Mr. Wright testified that he excluded 40 percent of his benefits from gross income based on his alleged 8-percent of compensation contribution and his employer's alleged 12-percent of compensation contribution to the plan.  Mr. Wright relied on the idea that, of the total amount contributed, his portion constituted 40 percent and his employer's portion was 60 percent. However, these assertions fall short of demonstrating that 40 percent of the benefits received by Mr. Wright may be excluded from gross income for several reasons.  First, petitioners' brief indicates that their 40-percent exclusion rate, and thus the underlying 8- and 12-percent contribution split upon which it was based, was only an approximation derived from various STRS rate contribution schedules that changed over the period of Mr. Wright's employment.  Hence, Mr. Wright's testimony failed to substantiate that 40 percent of his benefits were solely the

result of his contributions to the plan and that not more than 60 percent of his benefits were attributable to employer contributions. See Laws v. Commissioner, T.C. Memo. 2003-21; Miley v. Commissioner, T.C. Memo. 2002-236.

Second, petitioners have not shown that any amounts contributed by STRS were included in petitioners' gross income. Consequently, petitioners have not established that they are entitled to exclude portions of the benefits under section 105.[9]

Third, petitioners' contention is contrary to the applicable regulations discussed below. The regulations under section 72 explain the applicability of section 72 to accident and health plans, as well as to distributions from profit sharing plans

---

[9] In their petition, petitioners also cited sec. 104 in support of the alleged nontaxable nature of the disability payments. Since petitioners mentioned sec. 104 at trial only in their opening statement and did not address it on brief, the Court assumes that petitioners either have concluded that sec. 104 arguments are subsumed by sec. 105(a) or have abandoned and/or conceded any sec. 104 issue. In any event, sec. 104 would be inapplicable here. Sec. 104(a)(3) excludes from gross income those amounts received by an employee "through accident or health insurance". However, amounts are not excluded to the extent that these amounts were either: (1) Attributable to contributions paid by the employer which were not included in the employee's gross income, or (2) paid by the employer. Petitioners would not be entitled to exclude Mr. Wright's benefits under sec. 104(a)(3) because they failed to establish that Mr. Wright's contributions to STRS were used to fund his disability retirement benefits, much less the portion of the benefits that were funded by his employee contributions. Conroy v. Commissioner, 41 T.C. 685, 692-693 (1964), affd. 341 F.2d 290 (4th Cir. 1965); Merker v. Commissioner, T.C. Memo. 1997-277; Shaffer v. Commissioner, T.C. Memo. 1994-618.

under section 401.  Sec. 1.72-15(a), Income Tax Regs.[10]

Specifically, section 1.72-15(c), Income Tax Regs., provides for

a method of determining the taxation of amounts received as

accident or health benefits, and it describes the relationship of

section 72 with sections 104 and 105.  In general, the framework

established under section 72 applies where no exclusion is

available under section 104 or 105.  As such, section 1.72-15(c),

Income Tax Regs., applies to distributions from the STRS plan.

In a contributory plan, where accident, health, and

retirement benefits are all included, the accident and health

benefits attributable to employee contributions are tax free.

Sec. 1.72-15(c)(1), Income Tax Regs.  Where an employee

contributes to such a combined accident, health, and retirement

plan, any accident and health benefits are presumed to have been

made by the employer's contributions and not the employee's

contributions.  Sec. 1.72-15(c)(2), Income Tax Regs.[11]  However,

---

[10] Sec. 1.72-15(a), Income Tax Regs., states:

This section provides the rules for determining the
taxation of amounts received from an employer-
established plan which provides for distributions that
are taxable under section 72 (or for distributions that
are taxable under section 402(a)(2) or (e), or section
403(a)(2), in case of lump sum distributions) and which
also provides for distributions that may be excludable
from gross income under section 104 or 105 as accident
or health benefits. * * *

[11] Sec. 1.72-15(c)(2), Income Tax Regs., provides:

(continued...)

this presumption can be rebutted.  Accident and health benefits will be attributed to employee contributions where the plan expressly provides:  (1) That the accident or health benefits are provided in whole or in part by employee contributions; and (2) the portion of employee contributions to be used to provide the accident or health benefits.  Id.  Accordingly, absent an explicit plan provision, section 1.72-15(c)(2), Income Tax Regs., deems that the accident and health payments are attributable to the employer contributions and, therefore, taxable to the employee.

While petitioners tried to show, rationally, through their alleged 8-percent contribution that they were entitled to their chosen exclusion percentage, their rationale does not address the requirements of the controlling regulation.  The record does not indicate that the STRS plan provided that accident or health benefits were provided in whole or in part by Mr. Wright's contributions, nor did the plan specify any portion of Mr. Wright's contributions to be used for accident or health

---

[11](...continued)
However, if the plan does not expressly provide that the accident or health benefits are to be provided with employee contributions and the portion of employee contributions to be used for such purpose, it will be presumed that none of the employee contributions is used to provide such benefits.  Thus, in the case of a contributory pension plan, it will be presumed that the disability pension is provided by employer contributions, unless the plan expressly provides otherwise * * * [Emphasis added.]

benefits.  Thus, pursuant to section 1.72-15(c)(2), Income Tax
Regs., Mr. Wright's accident and health benefits are deemed
wholly attributable to his employer's contributions.

IV.  Preclusion of Adjustments in 1999 and 2000 Taxable Years

Petitioners did not specifically articulate the theory on
which they rely to bar respondent from pursuing the deficiencies.
Thus, the Court shall consider laches, equitable estoppel, and
collateral estoppel in light of petitioners' argument.

A.  Doctrine of Laches

Laches is an equitable doctrine which "prohibits a party
from asserting a claim following an unreasonable delay by such
party when there has been a change in circumstances during such
delay which would result in severe prejudice against an opposing
party should the claim be permitted."  Tregre v. Commissioner,
T.C. Memo. 1996-243, affd. without published opinion 129 F.3d 609
(5th Cir. 1997).  It is well settled that the United States is
not subject to the doctrine of laches in enforcing its rights.
United States v. Summerlin, 310 U.S. 414, 416 (1940); Guaranty
Trust Co. v. United States, 304 U.S. 126, 132-133 (1938).
Instead, the "timeliness of Government claims is governed by the
statute of limitations enacted by Congress."  Fein v. United
States, 22 F.3d 631, 634 (5th Cir. 1994).  Respondent asserted
petitioners' deficiencies within the period of limitations.  Even
though respondent did not seek to adjust petitioners' 1989, 1994,

1997, and 1998 returns, respondent is not barred by the doctrine of laches from asserting deficiencies for the 1999 and 2000 years in issue.

B.  Doctrine of Equitable Estoppel

Equitable estoppel is a judicial doctrine that precludes a party from denying his or her own acts or representations which induced another to act to his or her detriment.  Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992); Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982); Megibow v. Commissioner, T.C. Memo. 2004-41.  The Supreme Court has held that the Government may not be estopped "on the same terms as any other litigant."  OPM v. Richmond, 496 U.S. 414, 419 (1990); Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). Equitable estoppel is applied "against the Government with utmost caution and restraint".  Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959).  Any successful attempt to invoke equitable estoppel against the Commissioner must outweigh the policy consideration in favor of "an efficient collection of the public revenue".  Id.

In order to invoke the doctrine of equitable estoppel against the United States, petitioners must satisfy all the traditional elements:  (1) A false representation or wrongful, misleading silence by the party against whom estoppel is to be invoked; (2) an error in a statement of fact and not an opinion

or statement of law; (3) ignorance of the true facts by the taxpayer; (4) reasonable reliance on the act or statement by the taxpayer; and (5) detriment suffered by the taxpayer because of the false representation or wrongful, misleading silence. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); Megibow v. Commissioner, supra; Miller v. Commissioner, T.C. Memo. 2001-55. In addition, estoppel requires at least a minimum showing of some affirmative misconduct by a Government agent. United States v. Guy, 978 F.2d 934, 937 (6th Cir. 1992). Moreover, equitable estoppel does not bar or prevent the Commissioner from correcting a mistake of law. Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957); Schuster v. Commissioner, supra at 317.

Petitioners do not meet the requirements to invoke the doctrine of equitable estoppel against respondent. At trial, Mr. Wright testified that he received letters indicating that respondent was closing audit inquiries on a "no change" basis regarding the 1989, 1994, 1997, and 1998 taxable years. However, Mr. Wright did not introduce any of these letters at trial. Thus, the record is bereft of evidence that respondent made misrepresentations or misleading statements that would have engendered any detrimental reliance on the part of petitioners. Furthermore, petitioners' reliance on the alleged letters would be unjustified. Mr. Wright candidly testified that an IRS

Appeals officer told him that "closed does not mean closed" but that it could mean "abandoned for the time being". This conversation should have been an indication to petitioners that their disability payment exclusions were at least questionable.

Mr. Wright's actions demonstrate no ignorance of the facts. On the contrary, Mr. Wright testified that he decided to exclude portions of his disability retirement payments after talking with family and friends and after his own investigation of IRS publications. Petitioners' actions were initiated before any examinations. Petitioners' exclusion of 40 percent of Mr. Wright's disability payments was based not on respondent's decision to forgo adjustment of petitioners' returns; rather, it was the result of petitioners' own notions of exclusions to gross income. Therefore, equitable estoppel does not apply.

C.    Doctrine of Collateral Estoppel

Collateral estoppel is used for the "dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation." Meier v. Commissioner, 91 T.C. 273, 282 (1988). In collateral estoppel, or issue preclusion, the judgment in the prior suit precludes, during the subsequent second suit, the litigation of issues that were actually litigated and necessary to the outcome of the first suit. Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). Furthermore,

the doctrine of collateral estoppel only forecloses relitgation of an issue previously litigated and decided in a prior suit. Id. at 326 n.5; United States v. Intl. Bldg. Co., 345 U.S. 502, 505 (1953); Meier v. Commissioner, supra at 282. In Megibow v. Commissioner, supra, this Court recently observed:

> From a legal standpoint, income taxes are levied on an annual basis, such that each year represents a new liability and a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 598-600 (1948); Fla. Peach Corp. v. Commissioner, 90 T.C. [678], 682. Given this principle, collateral estoppel would not operate to establish entitlement to deductions in one year based merely on an allowance of similar deductions in a different year or years. See Barmes v. Commissioner, T.C. Memo. 2001-155 (rejecting attempts to apply collateral estoppel to depreciation deductions based on a prior litigated tax year), affd. 89 AFTR 2d 2002-2249, 2002-1 USTC par. 50,312 (7th Cir. 2002); see also, Adolph Coors Co. v. Commissioner, 519 F.2d 1280, 1283 (10th Cir. 1975)(rejecting an attempt to apply collateral estoppel even though the exact issue was raised in a prior Tax Court proceeding but, because the Commissioner abandoned the issue during the litigation, no judicial determination or findings were made), affg. 60 T.C. 368 (1973).

In a factual context, for collateral estoppel to apply, the following requirements are necessary:

> 1. The issue in the second suit must be identical in all respects with the one decided in the first suit.
> 2. There must be a final judgment rendered by a court of competent jurisdiction.
> 3. Collateral estoppel may be invoked against parties and their privies to the prior judgment.
> 4. The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.
> 5. The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. [Peck v. Commissioner, 90 T.C.

162, 166-167 (1988)(citations omitted), affd. 904 F.2d 525 (9th Cir. 1990).]

Petitioners fail to meet the prerequisites to invoke collateral estoppel.  Although the issue, the controlling facts, and the parties are identical for each of the 1989, 1994, 1997, 1998 taxable years and for the years 1999 and 2000 in issue, respondent's decision not to make adjustments to previous years' tax returns was not the subject of any litigation.  Thus, there was no final judgment rendered by any court, much less a court of competent jurisdiction.  Accordingly, collateral estoppel does not apply in this case.

V.    Conclusion

Petitioners are not entitled to exclude disability benefits payments from their gross income in excess of the amount determined by STRS and respondent.  Petitioners did not establish that the additional benefits they sought to exclude were attributable to Mr. Wright's after-tax contributions or that respondent was prohibited from making the adjustments to income at issue in this case.

To reflect the foregoing,

Decision will be entered

for respondent.