T.C. Summary Opinion 2009-131

UNITED STATES TAX COURT

JEREMIAH FRANCIS O'NEILL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6708-08S.                    Filed August 25, 2009.

Jeremiah Francis O'Neill, pro se.

<u>Joan M. Casali</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

───────────────

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
taxable years in issue.

other court, and this opinion shall not be treated as precedent for any other case.

Petitioner received a notice of deficiency for 2004, 2005, and 2006 in which respondent determined: (1) Deficiencies in income taxes of $5,894, $6,146, and $6,313, respectively, and (2) accuracy-related penalties under section 6662(a) for substantial understatement of income tax of $1,179, $1,229, and $1,263, respectively. The issues for decision are: (1) Whether petitioner may exclude from gross income payments received from the New York City Fire Department Pension Fund; and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for each of the years at issue. We hold that petitioner may not exclude said payments and that he is not liable for the penalties.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

When the petition was filed, petitioner resided in the State of New York.

From January 1955 until May 1976 petitioner was employed by the City of New York. Petitioner began his tenure with the City of New York as a police officer, but after 2 years he transferred to the fire department, where he served as a firefighter for the

remaining 19 years.  At the time petitioner transferred to the fire department, the New York City Fire Department, Article 1-B Pension Fund (Pension Fund) assumed liability for any retirement earnings he had accumulated as a police officer.  See N.Y. City Admin. Code secs. 13-301 through 13-379.1 (2009).  The Pension Fund required members to contribute a specified amount through payroll deductions determined by the member's age at appointment. Upon the member's 20th anniversary these mandatory contributions ceased.  During the course of his employment with the City of New York, petitioner contributed $5,894.46 to the Pension Fund.

In addition to the mandatory member contributions, the City of New York contributed a small amount on behalf of each member as well as an additional larger amount to maintain the overall integrity of the Pension Fund.  The Pension Fund did not maintain separate member accounts and did not distinguish between employer and employee contributions with respect to the categories of retirement.  Instead, the Pension Fund pooled all of the contributions into a contingency reserve fund.

The Pension Fund provided three categories of retirement: Regular service, ordinary disability, and accidental disability. The amount of benefit received depended upon the category under which the member retired.

Regular service retirement was available to all members after 20 years of service, regardless of the member's age, and

the benefit was determined on the basis of the member's final compensation and years of service. A member could continue in service after the 20 years, but had to retire by the age of 65.

Ordinary disability retirement was available when the member became physically or mentally incapacitated from the performance of duty as a result of a non-service-incurred disability. The Pension Fund determined the amount of benefit on the basis of the member's final compensation and number of years of service.

Accidental disability retirement was available when a member became physically or mentally incapacitated from the performance of service as a result of a service-incurred disability. The amount of benefit was equal to three-quarters of the member's final compensation. In the case of both ordinary and accidental disability retirement, the nature and severity of the injury did not determine the amount of benefit that the retiring member received.

Petitioner received ordinary disability retirement from the Fire Department commencing in 1976. At trial petitioner explained the nature of his disability, stating that while serving in the Armed Forces during the Korean War he injured his hand and that this injury left him more susceptible to injuring his foot when mounting and dismounting a fire truck.

After considering petitioner's condition, the New York City Fire Department's Bureau of Accounts and Procurement recommended

- 5 -

that petitioner be granted ordinary disability retirement.  As a result, on May 28, 1976, the Board of Trustees of the Pension Fund directed the retirement of petitioner for a "Non-Service Incurred Disability" with a retirement date of May 29, 1976.

In 2004, 2005, and 2006, petitioner received payments from the Pension Fund of $34,323.96, $34,539.96, and $34,833.96, respectively.  Petitioner did not report these amounts on his returns for those years.  It was (and still is) petitioner's position that these payments were tax-free pension insurance payments received as a result of his premium payments of $5,894.46 made during his tenure with the City of New York.

### Discussion

A.  Includability of Pension Fund Payments

Section 61(a) provides generally that "gross income means all income from whatever source derived".  Gross income is an inclusive term with broad scope, designed by Congress to "exert * * * 'the full measure of its taxing power.'"  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955) (quoting Helvering v. Clifford, 309 U.S. 331, 334 (1940)).  Section 61 specifically includes annuities and pensions as items of gross income.  Sec. 61(a)(9), (11).

Statutory exclusions from income are matters of legislative grace and are narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).  Taxpayers seeking an exclusion from income

must demonstrate they are eligible for the exclusion and bring themselves "within the clear scope of the exclusion." Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998).

The taxation of disability retirement benefits, such as those paid to petitioner under the Pension Fund, requires examination of sections 72, 104, and 105, and the regulations thereunder.

Section 72(a) generally includes in gross income any amount received as an annuity under an annuity, endowment, or life insurance contract. Section 72(b) provides an exclusion from gross income of an amount proportionate to the taxpayer's investment in the contract limited to the taxpayer's unrecovered investment in the contract. Section 72(c) defines the investment in the contract as the aggregate amount of premiums or other consideration paid for the contract.

If petitioner's disability retirement benefits are considered received under an annuity, endowment, or life insurance contract, the general rule includes the amounts received in gross income, but section 72(b) excludes a portion on the basis of petitioner's investment in the contract. However, for taxpayers whose annuity starting date was on or before July 1, 1986, section 72(d) provided a 3-year basis recovery rule.[2]

---

[2] This provision was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(c)(1), (h)(1)-(7), 100 Stat.
(continued...)

Under this provision, if the taxpayer would recover his total contribution in the first 3 years of his annuity, then he could exclude all amounts received under the contract until there had been so excluded an amount equal to the taxpayer's contribution. All amounts received thereafter would be includable in gross income.  Id.

Petitioner retired in 1976, and although it is unclear what amount, if any, he received in 1976, he received disability retirement benefits in 1977 of $17,303.04.  Because the amount received in 1977 exceeded petitioner's total contributions of $5,894.46 and was within the 3-year period, he was eligible to exclude his contributions to the Pension Fund from his taxable income for taxable year 1977.  All subsequent payments were to be included in petitioner's gross income.

B.  Exclusion Provisions of Sections 104 and 105

Section 72 applies to "a pension plan * * * which provides for the payment of pensions at retirement and the payment of an earlier pension in the event of permanent disability."  Sec. 1.72-15(a), Income Tax Regs.  However, section 72 does not apply to any amount received as an accident or health benefit, and the tax treatment of any such amount is determined under sections 104

---

[2](...continued)
2467, 2470, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1011A(b)(2)(A), (12)-(15) 102 stat. 3472, 3474.

and 105.  Sec. 1.72-15(b), Income Tax Regs.  Thus, generally speaking, "the framework established under section 72 applies where no exclusion is available under section 104 or 105." Wright v. Commissioner, T.C. Memo. 2005-5.  We turn therefore to the exclusions provided by sections 104 and 105.

Section 104(a), in relevant part, excludes from gross income certain amounts received as compensation for injuries or sickness described in paragraphs (1) through (4).[3]  Section 105(a) includes in gross income certain amounts received under accident and health plans for personal injuries or sickness, subject to two exceptions.

Although petitioner argues that his disability retirement benefits are excludable from income, the record clearly establishes that the amounts he received do not qualify for any of the exclusions of sections 104 and 105.

Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness".  However, section 104(a)(1) "does not apply to amounts which are received as compensation for nonoccupational injury or sickness".  Sec. 1.104-1(b), Income Tax Regs.  Thus, a statute will not be considered a workmen's compensation act if it allows for disability payments for reasons

---

[3]  Par. (5) of sec. 104(a), which applies to victims of terrorist attacks, is on its face inapplicable to the facts before us.

other than service-incurred injuries.  <u>Haar v. Commissioner</u>, 78 T.C. 864, 868 (1982) (citing <u>Riley v. United States</u>, 140 Ct. Cl. 381, 156 F. Supp. 751 (1957)), affd. 709 F.2d 1206 (8th Cir. 1983).

The Pension Fund established by the Administrative Code of the City of New York provided disability payments for both service- and non-service-incurred injuries.  The resolution adopted by the Board of Trustees of the Pension Fund on May 28, 1976, awarded retirement benefits to petitioner on account of a non-service-incurred disability.  These benefits are, therefore, not excludable from gross income under section 104(a)(1).

Section 104(a)(2) excludes from gross income damages "received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness".  "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  Thus, "The essential element of an exclusion under 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor."  <u>Glynn v. Commissioner</u>, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982).

The ordinary disability retirement benefits provided under the Pension Fund were not payments derived from a tort claim against the City of New York. Rather, such payments were made to petitioner as a result of a prior employment relationship with the City and were calculated on the basis of his years of service and final compensation. Consequently, the benefits petitioner received are not excludable from gross income under section 104(a)(2).

Section 104(a)(3) generally excludes from gross income amounts received by an employee through employer-provided accident or health insurance for personal injuries or sickness. This exclusion does not apply if the amounts received are attributable to employer contributions that were not includable in the gross income of the employee, or were paid by the employer. Id. If an employer and his employees contribute to a fund or purchase insurance that pays accident or health benefits to employees, section 104(a)(3) does not apply to amounts received thereunder to the extent that such amounts are attributable to the employer's contributions. Sec. 1.104-1(d), Income Tax Regs. "[I]n the case of a retirement plan to which an employee is required to contribute, it is presumed that the accident and health benefits are funded by employer contributions." Bagnell v. Commissioner, T.C. Memo. 1993-378 (citing Chosiad v. Commissioner, T.C. Memo. 1980-408). Moreover,

unless the plan expressly provides otherwise, the law presumes a contributing plan that provides both disability and retirement benefits sources the disability benefits in employer contributions.  Id.

The Pension Fund required petitioner to contribute, provided both disability and retirement benefits, and contained no express provision on the source of the disability benefits.  Therefore, the benefits received by petitioner are not excludable under section 104(a)(3).

Section 105 is the mirror image to section 104(a)(3) but provides two exceptions to includability.  Section 105(b) provides an exclusion for amounts paid by an employer to the taxpayer to reimburse the taxpayer for expenses for medical care. Medical expenses are not at issue in this case, so the exception in section 105(b) does not apply.

Section 105(c) excludes from gross income amounts attributable to employer contributions to the extent such amounts (1) constitute "payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, * * * and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work."  Courts have interpreted section 105(c) to exclude payments from gross income only if the plan or contract under which such payments are made varies the amount of the

payments according to the type and severity of the injury suffered by the employee.  Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. T.C. Memo. 1985-25.

The Pension Fund's computation of an ordinary disability retirement benefit did not vary with the nature of the disability.  Instead, the Pension Fund determined the member's benefit on the basis of final compensation and years of service. Thus, the exception under section 105(c) does not apply.

Returning now to section 104, subsection (a)(4) excludes from gross income amounts received for injuries or sickness resulting from active service in the Armed Forces.  Determining whether the injury or sickness resulted from active service in the Armed Forces requires examining the underlying provision upon which the benefits are predicated.  Haar v. Commissioner, supra at 866.  If the provisions consider solely the employee's ability to perform his or her job, and the nature or cause of the injury is irrelevant, then whether the injury arose in military service is simply not a factor.  Id. at 866-867.

Although petitioner incurred an injury while serving in the Korean War that contributed to the later injury of his foot, the ordinary disability retirement provision of the Pension Fund considered only his ability to perform the duties of a firefighter.  Therefore, the nature or cause of the injury was

irrelevant, and petitioner does not satisfy the requirements of section 104(a)(4).

On the basis of foregoing, petitioner is not entitled to exclude from gross income the ordinary disability retirement benefits he received from the New York City Fire Department, Article 1-B Pension Fund.  Accordingly, we hold that the ordinary disability retirement benefits petitioner received in 2004, 2005, and 2006 constitute gross income for each year.

C.  Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to a substantial understatement of income tax.  An understatement of income tax is substantial if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The definition of understatement for this purpose is the excess of the tax required to be shown on the return over the tax actually shown on the return.  Sec. 6662(d)(2)(A).

Tax is not understated to the extent that (1) the taxpayer bases treatment of the item on substantial authority, or (2) the taxpayer adequately discloses the item in the return or in a statement attached to the return and the taxpayer has a reasonable basis for the tax treatment of such item.  Sec. 6662(d)(2)(B).  Further, the penalty is inapplicable with respect

to any part of an underpayment if it is shown that there was reasonable cause for such position and that the taxpayer acted in good faith with respect to such position. Sec. 6664(c)(1). The Commissioner bears the burden of production, sec. 7491(c), but, if satisfied, the taxpayer then bears the ultimate burden of persuasion, Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Although the issue is a close one, we are satisfied, after considering the totality of the facts and circumstances, that petitioner acted in good faith and comes within the reasonable cause exception of section 6664(c)(1). Accordingly, we hold that petitioner is not liable for the accuracy-related penalties.

## Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiencies in taxes and for petitioner as to the accuracy-related penalties.