T.C. Memo. 2019-67

UNITED STATES TAX COURT

MARIA SHENORAH MCCREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10129-14L.                    Filed June 6, 2019.

Maria Shenorah McCree, pro se.

<u>Moenika N. Coleman</u>, <u>Linda L. Wong</u>, <u>Michael S. Navarro</u>, and <u>Cindy L.</u>

<u>Wofford</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review, pursuant to section 6330(d)(1),[1] of the determination by the Internal

---

[1]Unless otherwise indicated, all section references are to the Internal
                                                                    (continued...)

**[*2]** Revenue Service (IRS or respondent) to proceed by levy with collection of her unpaid Federal income tax liability for 2010.

After a trial on the merits, the issues for decision are whether: (1) the distribution that petitioner received from her retirement account is includable in her gross income for 2010, (2) petitioner is liable for the 10% additional tax for the retirement distribution imposed by section 72(t), and (3) respondent abused his discretion by sustaining the proposed levy to collect petitioner's unpaid income tax liability for 2010.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. Petitioner resided in Texas when she timely filed her petition.

I.     Petitioner's Retirement Distribution

In 2010 petitioner terminated her employment with the Department of Family and Protective Services to become a full-time student at the University of Phoenix. In November of that same year petitioner requested a withdrawal from a retirement account she had with the Employees Retirement System of Texas

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** (ERS).  Petitioner's ERS retirement plan was a qualified defined benefit plan under section 401(a).  Petitioner received a distribution of $20,056 from her ERS account.  After Federal income tax of $4,011 was withheld from her ERS distribution, petitioner received a check for $16,045, which she deposited in her savings account at Bank of America.  Petitioner was 42 years old when she received this distribution.  Petitioner used the proceeds from her ERS distribution to cover some of her tuition and living expenses.

II.     Petitioner's Form 1040 and Letter 4464C

Petitioner timely filed her 2010 Form 1040, U.S. Individual Income Tax Return.  She reported her ERS distribution of $20,056 as a rollover, reporting zero taxable amount, but she failed to deposit the distribution in a qualified account. Petitioner claimed a refund of $8,380.

On February 17, 2011, the IRS Integrity & Verification Operation (IVO) issued a Letter 4464C, Questionable Refund 3rd Party Notification, to petitioner.[2] The IVO's Letter 4464C informed petitioner that her 2010 refund was being held pending the IVO's review.  On March 28, 2011, petitioner received the $8,380 refund she had claimed on her 2010 tax return.

---

[2]The IVO verifies withholdings to protect taxpayers against claims for fraudulent inflated refunds.  See Internal Revenue Manual pt. 9.5.3.2.5 (Feb. 9, 2005) (questionable refund program).

**[*4]** On August 6, 2012, respondent issued to petitioner a statutory notice of deficiency determining a deficiency in her 2010 Federal income tax of $5,637 and an accuracy-related penalty under section 6662(a) of $1,127. Respondent determined that petitioner's $20,056 distribution was unreported taxable income. Respondent also determined that petitioner was liable for a 10% additional tax of $2,006 pursuant to section 72(t). Petitioner did not receive the notice of deficiency and, therefore, did not timely petition the Court in response to the notice of deficiency.[3]

III.    Offer-in-Compromise, CDP Hearing, and Remand

Respondent assessed the deficiency and accuracy-related penalty and sent petitioner a notice of balance due. In response petitioner submitted to respondent a Form 656-L, Offer in Compromise (Doubt as to Liability), dated March 20, 2013, for her 2010 tax liability. Petitioner challenged the correctness of the tax liability by attaching qualifying tuition payment documentation to Form 656-L.

---

[3]Petitioner filed a petition 253 days after the notice of deficiency was mailed to her. Even though petitioner checked the box to dispute a notice of deficiency, she attached to the petition letters disputing other IRS notices and letters. That petition was dismissed for lack of jurisdiction because the Court has no authority to extend the period provided by law for filing a petition "whatever the equities of a particular case may be and regardless of the cause for its not being filed within the required period." Axe v. Commissioner, 58 T.C. 256, 259 (1972); see also sec. 6213(a); Estate of Cerrito v. Commissioner, 73 T.C. 896 (1980).

[*5] Petitioner's offer-in-compromise (OIC) was sent to the IRS Appeals Office (Appeals) for consideration by an Appeals officer.

While Appeals Officer (AO) Christopher Roy was considering petitioner's OIC, respondent issued to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated July 31, 2013, for 2010 (levy notice). Upon receipt of the levy notice, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, and checked the box for "Proposed Levy or Actual Levy". On Form 12153 petitioner did not select a collection alternative but stated that "[t]he intent to levy my property should be withdrawn. At the time the tax was due I was a full time student." Petitioner's CDP hearing was assigned to Appeals Settlement Officer (SO) Diana Muniz.

On January 31, 2014, SO Muniz issued to petitioner a letter scheduling a telephone CDP hearing for February 25, 2014. In the letter SO Muniz erroneously informed petitioner that she would be unable to dispute the underlying liability at the CDP hearing because she had had a prior opportunity and that AO Roy was considering her OIC in a separate Appeals setting.

On February 25, 2014, SO Muniz called petitioner for the CDP hearing. SO Muniz informed petitioner that on the basis of the documents she provided to support her OIC, AO Roy partially abated her income tax liability by $1,008 and

**[\*6]** abated the accuracy-related penalty in full. SO Muniz again erroneously informed petitioner that she would be unable to contest the 2010 tax liability. Petitioner then stated that she did not owe the tax and wanted to review AO Roy's determination on her OIC before discussing her case further.

SO Muniz sent petitioner a letter, dated February 28, 2014, with AO Roy's OIC determination attached. The letter scheduled a followup telephone call for March 5, 2014. During that call petitioner again challenged the correctness of the tax liability and stated that she did not owe the tax and "wanted her day in Court". SO Muniz then stopped the CDP hearing and closed petitioner's case and, on March 26, 2014, issued a Notice of Determination Concerning Collection Action(s) Under Section(s) 6320 and/or 6330 (notice of determination), sustaining the proposed collection action for petitioner's remaining 2010 Federal income tax liability.

IV.    Proceedings Before the Court

Petitioner filed a petition to the Court for review of the notice of determination. Petitioner asserted that she was given a refund after the IRS reviewed the distribution from her retirement account. She further asserted that releasing the refund was "due to negligence on the IRS" and because the IRS was negligent she "should not have to pay for an IRS employee mistake."

**[\*7]**  On September 22, 2015, respondent filed a motion to remand to allow petitioner an opportunity to raise any legitimate arguments regarding her 2010 underlying liability.  In the motion respondent indicated that SO Muniz wrongly believed that petitioner could not challenge her underlying liability at the CDP hearing because she had had a prior opportunity to do so.  On September 29, 2015, the Court granted respondent's motion to remand and ordered that petitioner be provided a supplemental CDP hearing.

A.    Supplemental CDP Hearing

Petitioner's case was assigned to AO Mayngor Lam and SO William Taylor, neither of whom had previously played any substantive role in petitioner's case. On October 28, 2015, AO Lam sent petitioner a letter scheduling a telephone supplemental CDP hearing to discuss additional facts and information regarding her underlying liability pursuant to the Court's order.

The supplemental CDP hearing was held on November 9, 2015.  Petitioner did not offer any additional documents or information challenging the underlying liability at the hearing.  Instead, petitioner asserted that the IRS misallocated funds by issuing her a refund.  AO Lam informed petitioner that a determination of her underlying liability would be made on the basis of review of the information she had previously provided with her OIC and her CDP hearing request.  AO Lam

[*8] then transferred the case to SO Taylor, who verified that the requirements of applicable law and admistrative procedure were met in petitioner's case. He further verified that a proper assessment of petitioner's tax liability was made and that a notice and demand for payment was timely mailed to petitioner's last known address.

On December 21, 2015, SO Taylor issued to petitioner a letter scheduling a followup supplemental CDP hearing for January 13, 2016, to discuss collection alternatives to the proposed levy. In the letter SO Taylor informed petitioner that she qualified for an installment agreement and that he would process the necessary paperwork if she agreed to the proposed monthly payment. SO Taylor also stated that if petitioner did not agree to the proposed amount, she would need to complete a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, before they could discuss other options.

Petitioner did not respond to SO Taylor's letter or provide him with a Form 433-A or financial documents. SO Taylor called petitioner for the scheduled supplemental CDP hearing on January 13, 2016, and left her a voicemail message informing her that if she did not want a collection alternative then her case would be closed. Petitioner did not return SO Taylor's call or send him any other correspondence. On February 10, 2016, SO Taylor issued to petitioner a

**[*9]** Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy for 2010 (supplemental notice of determination).

B.     Respondent's Summary Judgment Motion

After issuing the supplemental notice of determination, respondent filed a motion for summary judgment.  The Court held a hearing on respondent's motion on May 23, 2016.  The issues respondent raised for summary judgment were whether:  (1) petitioner challenged the existence or amount of her 2010 income tax liability in her CDP hearing, (2) the petition raises valid claims for relief, (3) respondent is precluded from determining a deficiency after issuing a refund, and (4) SO Taylor abused his discretion when he sustained the proposed levy action.

The Court denied respondent's motion for summary judgment on the issues regarding petitioner's underlying liability.  The Court held that petitioner properly challenged her underlying liability during her initial CDP hearing and in her petition.  McCree v. Commissioner, T.C. Memo. 2017-145, at *14-*16.  However, the Court granted respondent partial summary judgment holding that respondent is not precluded from determining a deficiency after issuing a refund.  Id. at *19.  The Court stated that "[t]he practice of issuing refunds before examining a return

**[*10]** does not estop the IRS from later determining a deficiency on the return at issue and seeking to recover the funds previously allowed as a refund." Id. The Court further determined that contrary to petitioner's assertion, Letter 4464C is not an audit letter, and thus, petitioner was not subject to two audits. Id. at *16-*19.

The Court did not make a determination regarding whether SO Taylor abused his discretion when he sustained the proposed levy. Because the Court determined that petitioner's underlying liability should be reviewed de novo at a future trial setting, the Court stated that a review of SO Taylor's administrative determination was premature. Id. at *20.

C.    Trial

The Court held a trial on this case in Dallas, Texas. At trial petitioner raised the same arguments she asserted in response to respondent's motion. Specifically, petitioner contended that the IRS sent her a fraudulent refund, and because the IRS failed to verify that she was entitled to that refund, she should not be held liable for her 2010 tax deficiency. At the end of the trial the Court ordered that each party file an original brief by April 23, 2018. Both parties complied with this order and filed their briefs.

**[*11]**                                        OPINION

I.      <u>Jurisdiction</u>

Section 6331(a) authorizes the Secretary[4] to levy upon property and

property rights of a taxpayer who fails to pay a tax within 10 days after notice and

demand.  Before the Secretary may levy upon the taxpayer's property, the

Secretary must first notify the taxpayer of the Secretary's intent to levy.  Sec.

6331(d)(1).  The Secretary must also notify the taxpayer of his right to a CDP

hearing.  Sec. 6330(a)(1).

If the taxpayer requests a CDP hearing, the hearing is conducted by

Appeals.  Sec. 6330(b)(1).  At the hearing the taxpayer may raise any relevant

issue relating to the unpaid tax or the proposed collection action.  Sec.

6330(c)(2)(A).  Once the SO makes a determination, the taxpayer may appeal to

this Court for review.  Sec. 6330(d)(1).

II.     <u>Petitioner's Underlying Tax Liability</u>

Where the validity of the underlying tax liability is at issue, we review the

matter de novo.  <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v.

Commissioner</u>, 114 T.C. 176, 181-182 (2000).  A taxpayer may challenge the

---

[4]The term "Secretary" means the Secretary of the Treasury or his delegate.
Sec. 7701(a)(11)(B).

[*12] underlying tax liability during a CDP hearing if he did not receive a statutory notice of deficiency for the liability or did not otherwise have the opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004). The Court will consider an underlying tax liability on review only if the taxpayer properly raised the issue during the CDP hearing. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Petitioner did not receive a notice of deficiency. McCree v. Commissioner, at *4. In our prior opinion this Court held that petitioner properly contested her underlying liability during her initial CDP hearing by attaching to her CDP hearing request and to her petition documents that supported reducing her underlying tax liability. Id. at *14, *16. Although the Court was not able to decide the merits of petitioner's underlying liability on summary judgment, the Court determined that petitioner should be allowed to contest it in a future trial setting. Id. at *15. Consequently, because petitioner properly raised her underlying liability in her petition and during her initial CDP hearing, we will now review this issue de novo. See Giamelli v. Commissioner, 129 T.C. at 111; Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.

**[\*13]** A.    <u>Taxability of Petitioner's Retirement Distribution</u>

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that it is incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). The U.S. Court of Appeals for the Fifth Circuit, to which an appeal would presumably lie absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), has held that for the presumption of correctness to attach in an unreported income case, the Commissioner must establish "some factual foundation" for the assessment, <u>see</u> <u>Portillo v. Commissioner</u>, 932 F.2d 1128, 1133 (5th Cir. 1991), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1990-68; <u>Carson v. United States</u>, 560 F.2d 693, 696 (5th Cir. 1977). Petitioner concedes that she received her ERS distribution in 2010. Consequently, the presumption of correctness attaches to respondent's notice of deficiency, and petitioner bears the burden of proving that the determination is incorrect.

Section 402(a) provides that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities)." The facts establish that petitioner actually received a distribution of $20,056 from a qualified defined benefit plan under section 401(a). Because distributions from

**[*14]** qualified plans are generally treated as annuities and subject to tax to the extent provided in section 72, see Wright v. Commissioner, T.C. Memo. 2005-5, this sum is taxable to petitioner unless some exclusion applies.

Section 402(c)(1) provides a "rollover" exception to this general rule. It excludes from gross income any portion of a distribution that is transferred to an "eligible retirement plan" as defined in section 402(c)(8)(B). Section 402(c)(3)(A) provides the general rule that the rollover exclusion is not available for "any transfer of a distribution made after the 60th day following the day on which the distributee received the property distributed." Thus, to qualify for the rollover exclusion, petitioner must show that she transferred some portion of the distribution she received, within 60 days of receipt, to another eligible retirement plan.

Petitioner has not presented evidence showing that she transferred any portion of her ERS distribution to another eligible retirement plan within 60 days of receipt. To the contrary, petitioner admitted in her petition and at trial that she deposited her ERS distribution in her savings account in Bank of America, a nonqualified account. Because petitioner did not roll over any of the proceeds from her ERS distribution into a qualified plan within 60 days of receipt, the

[*15] "rollover" exception does not apply. Therefore, respondent properly included the ERS distribution in petitioner's gross income.[5]

B.      Additional Tax on Early Distribution

We now address whether petitioner is liable for the 10% additional tax on the retirement distribution imposed by section 72(t).

Section 72(t)(1) imposes a 10% additional tax on the taxable amount of an early distribution from a qualified retirement plan, which includes plans described in section 401(a), such as a trust exempt from tax under section 501(a). A distribution is early if made to an employee who has not attained age 59-1/2. Sec. 72(t)(2)(A)(i). Among other exceptions not relevant here, a taxpayer may be able to reduce the amount of an early distribution that is subject to the 10% additional tax by the amount of a taxpayer's qualified higher education expenses paid in the year of the early distribution.[6] Sec. 72(t)(2)(E).

---

[5]It appears that petitioner was the recipient of a windfall during the initial CDP hearing. For reasons not clear from the record, AO Roy reduced the taxable amount of the distribution to $16,056 in calculating his adjustment to petitioner's tax liability. We will treat this reduction as a concession by respondent.

[6]As stated supra, petitioner's ERS plan was a qualified defined benefit plan under sec. 401(a). The sec. 72(t)(2)(E) exception applies only to distributions from an "individual retirement plan". Respondent does not contend that petitioner's higher education expenses are ineligible for the sec. 72(t)(2)(E) exception on account of this distinction. Cf. Uscinski v. Commissioner, T.C.

(continued...)

[*16] In general, "qualified higher education expenses" means qualified higher education expenses (as defined in section 529(e)(3)) for education furnished to the taxpayer, the taxpayer's spouse, or any child of the taxpayer or the taxpayer's spouse, at an eligible educational institution. Sec. 72(t)(7). These include tuition, fees, books, supplies, and equipment. Sec. 529(e)(3)(A)(i). In the case of an individual who is an eligible student (as defined in section 25A(b)(3)) for any academic period, the term also includes reasonable costs for the period (as determined under the qualified tuition program) for room and board while attending an eligible educational institution. Sec. 529(e)(3)(B)(i). In general, the term "eligible student" means, with respect to any academic period, a student who is enrolled at least half time in a degree or certificate program at an eligible institution of higher education. See secs. 529(e)(3)(B)(i), 25A(b)(3); Higher Education Amendments of 1986, Pub. L. No. 99-498, sec. 407(a), 100 Stat. at 1479-1480 (codified at 20 U.S.C. sec. 1091(a)(1) (2006)).

Petitioner, who does not dispute that her ERS plan was a qualified retirement plan, was 42 years old at the time of the distribution. Because petitioner had not attained age 59-1/2, she received an early distribution from a

---

[6](...continued)
Memo. 2005-124 (holding that sec. 72(t)(2)(E) did not apply to a distribution from a sec. 401(k) account). We accordingly deem the issue conceded.

**[\*17]** qualified retirement plan under section 72(t)(1), and a 10% additional tax is imposed on the taxable portion of such distribution unless an exception applies.

When petitioner filed her OIC, she attached documents that showed she paid higher education expenses in the same year as her early distribution. These documents showed that petitioner was a full-time student at the University of Phoenix in 2010. According to petitioner's tuition statement, the University of Phoenix received payments of $11,727 for petitioner's tuition and expenses. This statement also showed that petitioner received scholarships and grants of $7,421. On the basis of this information, respondent has conceded that petitioner paid qualified higher education expenses of $4,306 ($11,727 – $7,421) and that the 10% additional tax does not apply to this portion of petitioner's ERS distribution.

At trial petitioner did not offer any evidence that the remaining $15,750 ($20,056 minus the portion allocated to higher education expenses of $4,306) of her ERS distribution qualifies for any other exception to the additional tax imposed on early distributions. Therefore, petitioner is subject to the 10% additional tax on $15,750 of the early distribution she received from her ERS retirement account.[7]

---

[7]During petitioner's OIC proceedings, AO Roy incorrectly determined that the amount of petitioner's qualified higher education expenses was $4,000 for

(continued...)

**[\*18]** III.    Respondent's Administrative Determinations

We now turn to respondent's determination to proceed with collection, which we review under an abuse of discretion standard.  See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  The taxpayer bears the burden of proving that the SO exercised his discretion "arbitrarily, capriciously, or without sound basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see Rule 142(a).  The Court does not conduct an independent review and substitute its judgment for that of the SO.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  If the SO follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities.  Link v. Commissioner, T.C. Memo. 2013-53, at \*12.

In deciding whether the SO abused his discretion in sustaining the proposed levy, we review the record to determine whether the SO:  (1) properly verified that the requirements of applicable law or administrative procedure had been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether

---

[7](...continued)
reasons not clear in the record.  Given respondent's concession that petitioner's qualified educational expenses for 2010 were $4,306, a Rule 155 computation will be necessary.

[*19] any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record confirms that SO Taylor properly discharged all of these duties.

Petitioner has not advanced any evidence that SO Taylor abused his discretion in sustaining the proposed levy action against petitioner for her 2010 income tax liability. Petitioner's briefs and trial testimony did not identify any defects in SO Taylor's verification process. At trial petitioner argued that she should not be required to pay her 2010 income tax liability because respondent should have verified that she did not roll over the proceeds from her ERS distribution when respondent's IVO reviewed her 2010 tax return. She further alleged that respondent misallocated funds by issuing a refund to her before determining a deficiency for the 2010 tax year. This Court has already rejected petitioner's arguments by holding that (1) the IVO's review and verification of petitioner's 2010 tax return does not constitute an audit or examination and (2) respondent is not precluded from determining a deficiency after issuing a refund. McCree v. Commissioner, at *18-*20.

It is clear from our review of the record that SO Taylor verified that the requirements of any applicable law and administrative procedure were followed

**[*20]** and that in sustaining the proposed levy against petitioner, SO Taylor properly balanced "the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

We therefore hold that petitioner has not satisfied her burden of showing that SO Taylor abused his discretion in sustaining the proposed levy, and we will sustain respondent's determination to proceed with collection against petitioner.

To reflect the foregoing,

Decision will be entered under

Rule 155.